IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CHARLES E. THORNTON,
#Y19115,

                    Plaintiff,

v.                                              Case No. 20-cv-00518-NJR

JOHN BALDWIN,
FRANK LAWRENCE,
JACQUELINE LASHBROOK,
WILLIAM QUALLS,
JOHN DOE 1, *correctional officer*,
OFFICER DRYDEN,
JOHN DOE 2, *sergeant*, and
JOHN DOES, *administrative placement
staff*,

                    Defendants.

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, Chief Judge:**

Plaintiff Charles Thornton, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center ("Menard") brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. He claims that Defendants have repeatedly subjected him to unconstitutional conditions of confinement by housing him with cellmates who have mental illnesses and are aggressive, leaving him in constant fear of assault. Thornton seeks monetary damages and injunctive and declaratory relief.

On August 19, 2020, Thornton filed a second Motion for Temporary Restraining Order and Preliminary Injunction. (Doc. 19). Before addressing the request for injunctive

relief, the Court must first review the First Amended Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* First Amended Complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

THE FIRST AMENDED COMPLAINT

Thornton alleges the following: On June 25, 2018, Correctional Officer Dryden brought inmate Lamare Garrett to be housed with Thornton. (Doc. 18, p. 3; Doc. 19, p. 5). Garrett was designated as seriously mentally ill ("SMI") and took psychotropic medications every day. (Doc. 18, p. 3). Garrett had disruptive behavior, was argumentative, and would:    (1) pace back and forth in the cell all day and night; (2) stand over Thornton while he was sleeping; (3) repeatedly scream out loud; (4) attempt to fight with Thornton; (5) smear feces on the wall and toilet; and (5) urinate in the corner of the cell. (*Id.* at p. 3-4). Garrett would not clean up after himself leaving Thornton to clean. (*Id.*). Correctional Officer Dryden and Lieutenant Qualls restricted Thornton from receiving adequate cleaning supplies forcing Thornton to live in unsanitary conditions. (*Id.* at p. 4).

Garrett started reporting to Correctional Officer Dryden that he needed to go on crisis watch for monitoring by a psychiatrist. Thornton would also ask Dryden to place Garrett on crisis watch, but Dryden ignored both their requests. Garrett then requested

protective custody and was taken to protective custody by Dryden, but returned within ten minutes leaving Thornton to "deal with Cellmate Garrett's psychological problems." (*Id.*). Thornton wrote kites to Lieutenant Qualls and the major of the West Cell House about Garrett's disruptive behavior and the unsanitary conditions of the cell, but nothing was done. Thornton lived in fear that he would be assaulted by Garrett. Eventually, Garrett was relocated to another cell. (*Id.*).

Thornton then filed grievances regarding being housed with an SMI designated inmate and in an unsanitary cell. (*Id.* at p. 5). In retaliation, he was then housed with Johnnie Hill. Hill was initially assigned to move into another cell but placed with Thornton by Correctional Officer Dryden. Hill is considerably larger than Thornton, takes psychotropic medication, and has a high aggression level and a violent prison record of assaults. Hill would try to provoke fights with Thornton, give him mean looks, and call him profane names. (*Id.*). Thornton was in constant fear of being assaulted and notified Dryden and John Doe 2 ("Sergeant John Doe") that Hill was aggressive and intimidating him, but they did not do anything about the situation. Dryden would often stop in front of the cell and nod and smile at Hill. (*Id.*). Intimidated and afraid of Hill, Thornton would do whatever Hill told him to do. (*Id.* at p. 6). Thornton would wash Hill's clothes and sit in the cell where Hill directed. (*Id.*).

Around September 9, 2018, Hill accused Thornton of touching him in his sleep. Thornton denied the accusation, and Hill said he was going to kill Thornton. (*Id.*). During the scheduled shower time later that morning, Thornton told John Doe 2 ("Sergeant John Doe") what had happened and said he could no longer stay in the cell with Hill because

he feared for his life. An officer went back to the cell with Thornton to talk with Thornton and Hill. The officer then spoke with Sergeant John Doe and returned to the cell telling the cellmates that Sergeant John Doe was going to move Thornton to the other side of the cell house. Later, Officer John Doe informed Thornton that Sergeant John Doe had changed his mind. (*Id.*).

On September 13, 2018, Dryden did not let Thornton out of the cell for commissary because Thornton did not have an "ID." (*Id.* at p. 5-6). Thornton explained that his ID was gone when he woke up that morning, and Dryden responded that Thornton should not have written grievances on him and called Thornton a "bitch." (*Id.* at p. 6).

On September 16, 2018, Lieutenant Qualls came to the cell in response to a kite that Thornton had sent. (*Id.*). Thornton requested to be moved to another cell because he was in fear of being assaulted by Hill. Hill told Qualls that Thornton was touching him at night. Qualls agreed to move one of them the next day. Qualls returned the next day yelling saying that he was no longer going to move them. Qualls also yelled that Thornton has "a sexual assault that what he's in here for." (*Id.*).

On September 19, 2018, Hill filed a Prison Rape Elimination Act ("PREA") complaint on Thornton. (*Id.*). Thornton was questioned by an internal affairs officer and cleared of any wrongdoing. (*Id.* at p. 7). Hill was not removed from Thornton's cell at that time by any of the defendants.

During his time housed with Garrett and Hill, Thornton was fearful of an assault due to a preexisting injury. He has small bullet fragments that remain lodged in the back right side of his neck from a gunshot wound, which cannot be removed, and he suffers

from nerve damage. (Doc. 18, pp. 3, 6). Because of this injury, if he is hit anywhere in the head, he could become paralyzed. (Doc. 19, p. 5).

PRELIMINARY DISMISSALS

Thornton names John Does, administration placement staff, as defendants and alleges that they did not respond to his grievance submitted on July 28, 2018 (Doc. 18, p. 4) and violated his rights by not reassigning him a new cellmate once they were notified of his cellmate complaints. (*Id.* at p. 7). While a plaintiff may use the "John Doe" designation to refer to specific individuals whose names are unknown, a plaintiff will run afoul of the pleading standards in *Iqbal* and *Twombly* by merely asserting that a group of individuals violated his constitutional rights. *See Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (finding the phrase "one or more of the Defendants" did not adequately connect specific defendants to illegal acts, and thus failed to adequately plead personal involvement). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (finding that a complaint must describe "more than a sheer possibility that a defendant has acted unlawfully"); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). Thornton does not identify particular acts or omissions by any specific administrative staff member who allegedly violated his constitutional rights; thus, John Does, administrative placement staff, are dismissed without prejudice.

Thornton also names as a defendant John Doe 1, described as a correctional officer at Menard, but does not mention this defendant elsewhere in the First Amended Complaint. He asserts he told an "officer" about issues with his cellmate Hill on

Page 5 of 14

September 9, 2018 (Doc. 18, p. 6), and that he asked another internal affairs "officer" if he could have Hill's PREA complaint removed from his record on September 19, 2018 (*Id.* at p. 7), but it is not clear if John Doe 1 is either of these individuals. Because Thornton fails to assert allegations against John Doe 1 in his statement of claim, this defendant is also dismissed. *See* FED. R. CIV. P. 8(a)(2); *Twombly,* 550 U.S. at 555.

### DISCUSSION

Based on the allegations in the First Amended Complaint, the Court finds it convenient to designate the following Counts:

> **Count 1:** Eighth Amendment failure to protect claim against Baldwin, Lawrence, Lashbrook, Dryden, Qualls, and John Doe 2 for housing Thornton with cellmates who are aggressive and suffer from mental illnesses causing Thornton to be in constant fear of assault.

> **Count 2:** Eighth Amendment unconstitutional conditions of confinement claims against Dryden and Qualls for refusing to provide Thornton adequate cleaning supplies during the time that he was celled with inmate Garrett.

> **Count 3:** First Amendment retaliation claim against Baldwin, Lawrence, Lashbrook, Dryden, Qualls, and John Doe 2.

The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the First Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the** *Twombly* **pleading standard.**[1]

---

[1] *Twombly*, 550 U.S. at 555.

### Count 1

Thornton alleges that he complained to each Defendant regarding the threat to his safety imposed by his cellmate Garrett, who was designated as SMI, and then Hill, who had a record of assaulting cellmates, and that Defendants failed to act. These allegations are sufficient for Count 1 to survive screening. *See Brown v. Budz,* 398 F. 3d 904, 914-15 (7th Cir. 2005).

### Count 2

Thornton's allegations that while he was celled with Garrett, he was forced to live in unsanitary conditions and refused cleaning supplies by Dryden and Qualls state a viable Eighth Amendment claim, and Count 2 also survives screening. *See Budd v. Motley,* 711 F. 3d 840, 842 (7th Cir. 2013).

### Count 3

To state a First Amendment retaliation claim, Thornton must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012).

Count 3 will proceed against Dryden who Thornton claims placed Hill in his cell and then prohibited him from going to commissary in retaliation for filing grievances.

Count 3 will be dismissed, however, as to the other defendants. Thornton makes the vague claim that "[i]n retaliation for filing grievances…inmate Johnnie Hill…was moved into the cell with plaintiff." (Doc. 18, p. 5). This allegation is not asserted against

a specific defendant, and the Court does not accept "adequate abstract recitations of the elements of a cause of action or conclusory statements." *Brooks v. Ross,* 578 F.3d 574 (7th Cir. 2009). Therefore, Count 3 is dismissed against Baldwin, Lawrence, Lashbrook, Qualls, and John Doe 2.

TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION MOTION

On August 7, 2020, Thornton filed a motion for Temporary Restraining Order and Preliminary Injunction. (Docs. 11, 12, 13). In the Motion, he alleged that he is in constant fear of being assaulted by his current cellmate. He also argued that prison officials do not properly review prison records to determine whether inmates are suitable when assigning cellmates. The Court denied the Motion finding that Thornton had not demonstrated a likelihood of success on the merits or irreparable harm. (Doc. 16). The Court noted that a policy of random cellmate assignments is not in and of itself unconstitutional and that Thornton had not alerted any of the defendants of the situation regarding the risk imposed by his current cellmate. Furthermore, although Thornton complained of ongoing fear of assault by his various cellmates since 2018, he did not allege that he had actually ever been assaulted. The Court determined that he had not made a clear showing that he was entitled to relief and denied the motion.

In the current Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 16), Thornton asserts the same allegations regarding his current cellmate. (Dc. 19). Thornton claims he is in constant fear of assault and his cellmate (1) is very argumentative, aggressive, and tries to provoke fights with him; (2) does not allow Thornton to get up in the morning until he has finished doing things in the cell; (3) forces

Thornton to go to sleep at 7:00 p.m.; (4) listens to music with his headphones on and raps out loud; (5) calls Thornton insulting names; and (6) daily threatens "to beat him up." On August 15, 2020, Thornton submitted an emergency grievance asking to be separated from his cellmate. He requests to be placed in a single cell until the resolution of this lawsuit. (*Id.* at p. 4).

There are significant differences between a temporary restraining order ("TRO") and a preliminary injunction. A TRO can be issued without notice to the party to be enjoined, but it may last no more than fourteen days. FED. R. CIV. P. 65(b)(2). Further, a TRO may be issued without notice only if "specific facts in an affidavit or a verified complaint clearly show that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." FED. R. CIV. P. 65(b)(1)(A). Such injunctive relief is warranted "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan,* 511 U.S. 825, 845 (1994).

Without expressing any opinion on the merits of any of Thornton's other claims for relief, the Court concludes that a TRO should not be issued in this matter. The Prison Litigation Reform Act requires that any grant of prospective relief, including TROs, "shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs" and cannot issue "unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626. Federal courts must exercise equitable restraint when asked to take over the administration of a prison, something that is best left to correctional officials and their

staff. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995); *Rizzo v. Goode*, 423 U.S. 362, 379 (1976). Thornton states that he has informed his mental health professionals about his issues with his current cellmate and wrote one emergency grievance four days before filing this motion but does not assert that he has directly notified any of the correctional officers or staff in his cellhouse regarding his fears of assault. As it does not appear that the appropriate prison officials have been notified of Thornton's current situation, the Court does not find it appropriate to order Thornton to be transferred to a single cell without providing notice to Defendants and giving them an opportunity to respond. Accordingly, the motion for a TRO is denied without prejudice at this time.

Thornton's request for a preliminary injunction will remain pending until Defendants have been served. Defendants are ordered to respond to the request for a preliminary injunction within **14 days** of service of the pleadings in this case, at which point the Court will determine the need for a hearing on the motion requesting a preliminary injunction.

## OFFICIAL CAPACITY

Thornton brings this lawsuit against Baldwin, Lawrence, and Lashbrook in their official and individual capacities. State officials named in their official capacities may not be sued for monetary damages in federal court, and the most appropriate government official responsible for ensuring that injunctive relief is carried out is the acting warden. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001); *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Therefore, the official capacity claims are dismissed against Baldwin, Lawrence, and Lashbrook, and

Anthony Wills, the Warden of Menard, will be added as a defendant in his official capacity only for the purpose of implementing any injunctive relief that maybe ordered and responding to discovery aimed at identifying the unknown defendant.

### IDENTIFICATION OF UNKNOWN DEFENDANT

Thornton will be allowed to proceed with Count 1 against John Doe 2. This defendant must be identified with particularity before service of the First Amended Complaint can be made. Thornton will have the opportunity to engage in limited discovery to ascertain his or her identity. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). Once the name of this individual is discovered, Thornton shall file a motion to substitute the newly identified defendant in place of the generic designations in the case caption and throughout the First Amended Complaint.

### DISPOSITION

For the reasons stated above, the First Amended Complaint survives preliminary review pursuant to Section 1915A. **Count 1** will proceed against **Baldwin, Lawrence, Lashbrook, Dryden, Qualls,** and **John Doe 2**. **Count 2** will proceed against **Dryden** and **Qualls**. **Count 3** will proceed against **Dryden** but is **DISMISSED** as to the other defendants. **John Does, administrative staff**, and **John Doe 1** are **DISMISSED** without prejudice. The Clerk of Court is **DIRECTED** to terminate them as defendants. The Clerk shall **ADD Anthony Wills** as a defendant in his official capacity only for the purposes of implementing injunctive relief and identifying the John Doe defendant.

The Court **DENIES** the request for a temporary restraining order and **DEFERS** ruling on the request for a preliminary injunction. (Doc. 19). Defendants are **ORDERED**

**to respond to the request for a preliminary injunction within 14 days of service of the pleadings in this case.**

The Clerk of Court shall prepare for **Baldwin, Lawrence, Lashbrook, Dryden, Qualls, John Doe 2** (once identified), and **Anthony Wills** (official capacity only):   (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint (Doc. 18), the Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 19), and this Memorandum and Order to Defendants' place of employment as identified by Thornton. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant cannot be found at the work address provided by Thornton, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on the unknown defendant until such time as Thornton has identified him or her by name in a properly filed motion for substitution. Thornton is **ADVISED** that it is his responsibility to provide the Court with the name and service

addresses for these individuals.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g)**. Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.**

If judgment is rendered against Thornton, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Thornton is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   August 27, 2020**

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days or more**. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.