IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CHARLES E. THORNTON,
#Y19115,

        Plaintiff,

v.

JOHN BALDWIN,
FRANK LAWRENCE,
JACQUELINE LASHBROOK,
WILLIAM QUALLS,
OFFICER DRYDEN, and
JOHN DOE 2, *sergeant*,

        Defendants.

Case No. 20-cv-00518-NJR

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Charles Thornton, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center ("Menard"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. He claims that Defendants have repeatedly subjected him to unconstitutional conditions of confinement by housing him with cellmates who have mental illnesses and are aggressive, leaving him in constant fear of assault.

On August 7, 2020, Thornton filed a Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction. (Docs. 11, 12, 13). The Court denied the motion finding that Thornton has not demonstrated a likelihood of success on the merits of his claims and that he would suffer irreparable without an injunction. (Doc. 16). On August

12, 2020, the Court granted Thornton's motion to file an amended complaint (Doc. 17), and on August 19, 2020, Thornton filed a second Motion for a TRO and Preliminary Injunction. (Doc. 19).

The Court conducted a preliminary review of the First Amended Complaint, under 28 U.S.C. § 1915A, and issued a Merit Review Order allowing Thornton to proceed with the following claims:

> **Count 1:** Eighth Amendment failure to protect claim against Baldwin, Lawrence, Lashbrook, Dryden, Qualls, and John Doe 2 for housing Thornton with cellmates who are aggressive and suffer from mental illnesses causing Thornton to be in constant fear of assault.
>
> **Count 2:** Eighth Amendment unconstitutional conditions of confinement claims against Dryden and Qualls for refusing to provide Thornton adequate cleaning supplies during the time that he was celled with inmate Garrett.
>
> **Count 3:** First Amendment retaliation claim against Dryden.

(*Id.*). The Court denied the request for a TRO, but ordered Defendants to respond to his request for a preliminary injunction. Before Defendants filed a response, Thornton filed another Motion for a TRO and Preliminary Injunction (Doc. 23) on August 28, 2020. (Doc. 23). Defendants filed a response to the second Motion for a TRO and Preliminary Injunction on September 18, 2020. (Doc. 33). Thornton did not file a reply. Instead, he filed a fourth Motion for a TRO and Preliminary injunction on September 25, 2020 (Doc. 36), and on September 29, 2020, Thornton filed a motion stating that he did not receive Defendants' response to his second Motion for a TRO and Preliminary Injunction and asking for the Court to send him a copy. (Doc. 37). Thornton has not requested additional

time to file a reply and regardless, "[r]eply briefs are not favored and should be filed only in exception al circumstances." SDIL-LR 7.1(g). Therefore, the Court finds it appropriate to rule on the Motions for a TRO and Preliminary Injunction and because all three pending motions allege similar facts, the Court will address them collectively.

### TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION MOTIONS

In all three motions requesting emergency injunctive relief, Thornton states that he has small bullet fragments that remain lodged in the back right side of his neck from a gunshot wound, which cannot be removed. (Docs. 19, 23, 36). Because of this injury, if he is hit anywhere in the head, he could become paralyzed. He alleges that his current cellmate, whom he has been housed with since May 2020, is very aggressive, argumentative, and has threatened to physically harm him. (Docs. 19, 23, 36). He is in constant fear of assault by his cellmate that may result in paralysis. Specifically, Thornton states that his cellmate (1) intentionally tries to provoke fights; (2) forces Thornton to go to sleep each night around 7:00 p.m.; (3) does not allow Thornton to get up in the morning until he is finished "doing whatever he's doing;" (4) raps loudly while listening to music using headphones; (5) knows about Thornton's previous gunshot injury; (6) threatens to "beat up" Thornton because Thornton suffers from mental health conditions; and (7) calls Thornton demeaning names. On August 16, 2020, the cellmate became angry with Thornton when Thornton did not understand what the cellmate was saying. The cellmate balled up his fists, jumped in Thornton's face, and told Thornton that he felt like "kicking [Thornton in] the back of the head and beating [his] ass." The next day, the cellmate told Thornton he had a dream that he had paralyzed Thornton. On August 24, 2020, the

cellmate pressed his finger against Thornton's head, causing Thornton's head to bend back, stating that it was "his last time repeating [himself] to [Thornton]."

Thornton argues that Defendants have actual knowledge of the impending harm that is easily preventable and that any remedy at law provided after he has incurred injuries would be inadequate. Thornton asks the Court to order that he be housed in a single-man cell.

Defendants argue that Thornton has misrepresented most, if not all, of the facts regarding his current living condition. (Doc. 33). They state that Thornton has filed two grievances regarding his current cellmate but argue that the complaints were investigated and determined to be false. (*Id.* at p. 3). They claim that Thornton and his cellmate are adequately paired. Both individuals have an aggression level of 3, they are of the same age range, forty and forty-one, and their release dates are 2068 and 2051. Defendants claim that the cellmates are of similar size, although Thornton's cellmate is "slightly taller and heavier." (*Id.* at p. 4). Defendants also claim that the cellmate does not have an assault on his disciplinary record and is not listed as being seriously mental ill. (*Id.*). They argue that Thornton has not presented any evidence that he will suffer irreparable harm if he does not receive an injunction and if he truly believes he is in imminent danger, then he can request protective custody.

Although there are significant differences between a TRO and a preliminary injunction,

> "to obtain preliminary injunctive relief, whether through a TRO or preliminary injunction, [a plaintiff must] show that (1) his underlying claim has some likelihood of success on the merits, (2) no adequate remedy at law

exists, and (3) he will suffer irreparable harm without the injunction. *Meritte v. Kessel,* 561 F. App'x 546, 548 (7th Cir. 2014). As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.,* 311 F.3d 796, 804 (7th Cir. 2002). Once a plaintiff has met his burden, the Court must weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.; Korte v. Sebelius,* 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte,* 735 F.3d at 665. In addition, the Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, the injunctive relief sought must relate to the claims in the pending in the underlying lawsuit and would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents. *See Devose v. Herrington,* 42 F.3d 470, 471) (8th Cir. 1994); FED. R. CIV. P. 65(d)(2).

The Court finds that Thornton has failed to make a clear showing that he is entitled to a TRO or preliminary injunction. The claims alleged in the motions for emergency injunctive relief are not brought against any of the Defendants in this action. Thornton states the he has repeatedly told his mental health providers that he is in fear of assault from his cellmate, it is his belief that the mental health care providers informed the cellhouse correctional officers, and he has filed two emergency grievances asking to be

housed in a single-man cell. (Doc. 19, p. 3; Doc. 23, p. 6; Doc. 36-1, p. 4). Thornton further alleges that placement staff and the present warden, Anthony Wills, are responsible for the reasonable safety of inmates. (Doc. 19, p. 4). Thornton is not, however, proceeding with claims against any of these individuals. The mental health professionals are not parties to this action, the Court dismissed the John Does, administration placement staff, as defendants in the Merit Review Order (Doc. 20, p. 6), and the Court added Warden Wills as a defendant solely for the purposes of implementing any injunctive relief and responding to discovery aimed at identifying the remaining unknown defendant. (*Id.* at p. 11). There is no evidence, and Thornton does not assert, that Defendants Baldwin, Lawrence, Lashbrook, Dryden, Qualls, or Sergeant John Doe 2, who he claims in the First Amended Complaint failed to protect him by housing him with aggressive cellmates in 2018, are personally involved in or have been notified of his current situation. Thornton cannot use a motion for a TRO or preliminary injunction as a vehicle to bring new allegations and name additional defendants. As his complaints regarding his current cellmate deal with matters wholly outside of the allegations against Defendants in the First Amended Complaint, the requests for injunctive relief are not properly brought in this case.

Furthermore, the claims in the motions do not establish that Thornton will suffer irreparable harm without the issuance of preliminary injunctive relief. Other than filing two grievances requesting to be housed in a single-man cell, Thornton has not requested protective custody or even to be celled with a different inmate. (*See* Doc. 23, p. 7; Doc. 36-1, p. 4; Doc. 36-2, pp. 3, 4). He does not refute Defendants' claim that if he truly believes

he is in "imminent danger, he can request protective custody," which he has not done. (Doc. 33, p. 4). He states that he is entitled to live in an environment that does not threaten his mental and physical well-being. But "[i]t cannot be overstated that prisons are inherently dangerous places[,]" *Adams v. Smith,* No. 13-cv-985-JPG-PMF, 2014 WL 1759112, at *3 (S.D. Ill. Apr. 30, 2014) (citing *Farmer v. Brennan,* 511 U.S. 825, 858-59 (1970), and the Court acts with great hesitation in matters of prison administration. At this point, Thornton "can avoid irreparable harm simply by requesting proactive custody[.]" *Smith v. Harrington,* No. 13-cv-0900-MJR-SCW, 2014 WL 3537680, at *2 (S.D. Ill., July 17, 2014). Accordingly, the Motions for a TRO and Preliminary Injunction (Docs. 19, 23, 36) are denied.

### MOTION FOR CLARIFICATION

Thornton has filed a motion asking whether Defendants are still required to answer the motion for a preliminary injunction within fourteen days of service even though John Doe 2 has not been identified. (Doc. 29). The motion is granted. As provided in the Merit Review Order, Defendants must respond to the second motion for a preliminary injunction within fourteen days of service. (Doc. 20, p. 12). Service of process was still ordered on the identified defendants, and they were required to file a response, regardless of the fact that John Doe 2 remains unidentified and has not yet been served. Furthermore, based on the pleadings, including the response filed by Defendants Lashbrook, Lawrence, Qualls, Baldwin, and Dryden (Doc. 36), the Court has denied all the motions for emergency injunctive relief filed by Thornton, and thus, a response by John Doe 2 will not be required.

### MOTION FOR LEAVE TO CONDUCT LIMITED DISCOVERY

Thornton requests to engage in limited discovery for the purpose of adequately litigating his preliminary injunction motion, if the Court schedules a hearing. (Doc. 30). He requests all of his documents relating to his mental health records in order to demonstrate that his mental health professionals told him they would inform correctional officers about his problems with his current cellmate. As the Motions for a TRO and Preliminary Injunction have been denied, the request to engage in limited discovery is also denied.

### CONCLUSION

For the reasons set forth above, the Motions for a TRO and Preliminary Injunction (Doc. 19, 23, 36) and the Motion for Leave to Conduct Limited Discovery (Doc. 30) are **DENIED**. The Motion for Clarification (Doc. 29) is **GRANTED.** The Motion for Copy (Doc. 37) is **GRANTED**; the Clerk of Court is **DIRECTED** to send Thornton a copy of the Response to Plaintiff's Motion for Preliminary Injunction (Doc. 33) filed by Defendants.

**IT IS SO ORDERED.**

DATED:   September 29, 2020

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**